**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| JAMES MICHAEL DENOFRIO,<br>      Appellant, | DOCKET NUMBER<br>PH-1221-19-0038-W-1 |
| v. | |
| DEPARTMENT OF VETERANS<br>   AFFAIRS,<br>      Agency. | DATE: September 19, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Stephen D. Wicks, Esquire, Altoona, Pennsylvania, for the appellant.

Marcus S. Graham, Esquire, Pittsburgh, Pennsylvania, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and did not participate in the adjudication
of this appeal.

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in this individual right of action (IRA) appeal. Generally, we grant petitions such as this one only in the following

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to supplement the administrative judge's findings of fact and apply the appropriate analytical framework, we AFFIRM the initial decision.

## BACKGROUND

At the time relevant to this appeal, the appellant held the position of Administrative Officer for an agency facility in Altoona, Pennsylvania. Initial Appeal File (IAF), Tab 1 at 1. He has filed multiple complaints with the Office of Special Counsel (OSC), alleging that he was subject to whistleblower reprisal. *Id*. at 8. In a letter dated September 2018, OSC closed one of those complaints and advised the appellant of his Board appeal rights. *Id*. at 34-37. This timely IRA appeal followed. *Id*. at 1-6. After developing the record and holding a 3-day hearing, the administrative judge issued an initial decision. IAF, Tab 53, Initial Decision (ID).

The administrative judge first found that the appellant met his burden of proving that he made protected disclosures and engaged in protected activities. ID at 4-5, 23-24. As further detailed in the initial decision, this included (1) prior OSC complaints, (2) prior Board appeals, (3) an email to Congress about the Altoona Director instructing staff to not provide testimony or respond to

subpoenas, (4) emails to Congressional staff about health and safety concerns at the Altoona facility, and (5) a complaint with the agency's Office of Inspector General (OIG) alleging a violation of policy regarding the timely discharge of patients. ID at 4-5.

The administrative judge next found that the appellant proved the contributing factor criterion for two nonselections and an alleged hostile work environment. ID at 24-25. Nevertheless, he found that the appellant was not entitled to corrective action.

Regarding the nonselections, the administrative judge found that the agency rebutted the appellant's prima facie case of reprisal. ID at 25-30. Regarding the hostile work environment claim, the administrative judge found that most of the alleged harassment was not attributable to the appellant's protected disclosures or activities, ID at 30-35, and the only exception did not rise to the level of actionable harassment, ID at 35-37.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. In this petition, the appellant challenges the administrative judge's findings regarding one of the two nonselections adjudicated in this appeal—his nonselection to the Program Specialist position.[2] *Id*. at 4-8, 17-18. He also challenges the administrative judge's finding regarding his claim of a retaliatory hostile work environment. *Id*. at 8-19. Finally, the appellant submits new evidence, *id*. at 25-68, along with arguments that we should consider this new evidence for the first time on review, *id*. at 19-24. The agency has filed a response to the appellant's petition. PFR File, Tab 3.

_____

[2] Because the appellant has not presented any arguments regarding his nonselection for the Program Analyst position and the administrative judge's findings about the same, we will not revisit that matter.

## DISCUSSION OF ARGUMENTS ON REVIEW

After establishing jurisdiction in an IRA appeal, an appellant has the burden of proving by preponderant evidence[3] that (1) he made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). If the appellant meets this burden, the agency is given an opportunity to prove, by clear and convincing evidence,[4] that it would have taken the same personnel action in the absence of the protected disclosure or activity. *Id.*

In determining whether the agency has met its burden of proving that it would have taken the same personnel action in the absence of an appellant's protected disclosures or activities, the Board will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers, but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Phillips v. Department of Transportation*, 113 M.S.P.R. 73, ¶ 11 (2010). In addition, the Board is mindful that "[e]vidence

---

[3] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

[4] Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established; it is a higher standard than preponderant evidence. 5 C.F.R. § 1209.4(e).

only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

Once more, the administrative judge found that the appellant proved that he made protected disclosures and engaged in protected activities. ID at 4-5, 23-24. The administrative judge also found that the knowledge/timing test was satisfied for the alleged personnel actions at issue in this appeal—two nonselections and a hostile work environment. ID at 24-25; *see Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 25 (2015) (explaining that an appellant can prove the contributing factor element by showing that the official taking the personnel action knew of the protected disclosure or activity within a period of time such that a reasonable person could conclude that the protected disclosure or activity was a contributing factor in the personnel action). These findings are not disputed on review.

The arguments on review are limited to the following: First, did the agency prove by clear and convincing evidence that its nonselection of the appellant for the Program Specialist position would have occurred in the absence of the appellant's protected disclosures and activities? Second, did the appellant prove that he was subject to harassment or any other change that rose to the level of an actionable "personnel action" and, if so, did the agency prove that the same personnel action would have occurred in the absence of the appellant's protected disclosures and activities?

The agency rebutted the appellant's prima facie case of reprisal regarding his nonselection to the Program Specialist position.

The administrative judge found that the appellant met his burden of establishing a prima facie case of reprisal regarding his nonselection to the Program Specialist position. ID at 23-25; *see King v. Department of the Army*, 116 M.S.P.R. 689, ¶ 10 (2011) (recognizing that a nonselection constitutes a

personnel action under the whistleblower statute). This finding is not disputed on review. Therefore, it became the agency's burden to prove by clear and convincing evidence that the same nonselection would have occurred in the absence of the appellant's protected disclosures and activities.

The following facts about this nonselection, as explained by the administrative judge and documented throughout the record, appear to be undisputed: The appellant was among the 13 candidates who received an initial interview for the Program Specialist vacancy. ID at 6. A three-member panel conducted those initial interviews, asking each candidate the same questions, as each panel member separately rated their answers. ID at 6-7; IAF, Tab 11 at 56-79. Of the initial interviewees, two panel members gave the appellant the third-highest score, and one panel member gave the appellant the fourth-highest score. ID at 7; IAF, Tab 11 at 53. With the scores across panel members combined, the appellant had the third-highest score of those interviewed for the Program Specialist position. ID at 7; IAF, Tab 11 at 53. At the next step in the selection process, the initial interview panel members forwarded only the two highest scoring candidates—which did not include the appellant—to the selecting official for a second interview. ID at 8. The selecting official conducted those two interviews and made a selection. *Id*.

In analyzing whether the agency met its burden of proving that this nonselection would have occurred in the absence of the appellant's protected disclosures and activities, the administrative judge considered each member of the initial interview panel and the selecting official. ID at 26-29. Of the initial interview panel members, she found that one had no knowledge of the appellant's whistleblowing and there was no indication that he was influenced by someone who did. ID at 27.

The administrative judge next found that the other two initial interview panel members admitted that they had knowledge of the appellant's whistleblowing, but credibly testified that they did not discuss his whistleblowing

or otherwise let it influence the selection process. ID at 9, 27-28. The administrative judge further found that the scores among panel members did not suggest retaliation, since those with and without knowledge of the appellant's whistleblowing scored him similarly and all gave him high marks; none gave him lower marks that might indicate an attempt to sabotage the appellant. ID at 28. Lastly, the administrative judge found that these panel members did not have any discernable motive to retaliate because they were not implicated by the appellant's whistleblowing activity and they did not work at the Altoona facility at the time of the selection process. ID at 27-28.

Regarding the selecting official—the Director of the Altoona facility—the administrative judge made several findings. Most notably, he found that there was no indication that the selecting official had any input on the narrowing of candidates to exclude the appellant from further consideration. ID at 26-27. The administrative judge also indicated that, although the selecting official was implicated by some of the appellant's whistleblowing activity, that whistleblowing occurred after the nonselection. ID at 26.

On review, the appellant argues that the administrative judge made several errors or omissions of fact, PFR File, Tab 1 at 4-8, and therefore failed to comply with the requirements of *Carr* and *Whitmore*, *id*. at 17-18. As further described below, we modify the initial decision to supplement the administrative judge's findings while agreeing with his conclusion that the agency met its burden.

The appellant first argues that one of the panel members with knowledge of his status as a whistleblower worked at the Altoona facility during the relevant period, despite the administrative judge indicating otherwise. *Id.* at 4-5 (referencing ID at 27). In particular, the official had left his permanent position at a Pittsburgh facility for a detail assignment as the Executive Assistant to the Altoona Director at the time of the appellant's interview. *Id.* On this point, the evidence supports the appellant's assertion. According to deposition testimony from this official, he served as the Executive Assistant from January through

March 2018, and the appellant's interview occurred in the intervening month of February. IAF, Tab 11 at 51-52, Tab 41 at 62, 82-83.

Next, the appellant argues that the administrative judge was correct to note that this member of the initial interview panel—the Executive Assistant—made the decision to forward only the top two scoring interviewees to the Director for a final selection before any interview had occurred, but the administrative judge failed to note that he did so in concert with the Director, and that the Executive Assistant would ultimately reveal all the initial interview scores to the Director while forwarding only the top two for selection. PFR File, Tab 1 at 5-6 (referencing IAF, Tab 11 at 44-45, Tab 41 at 107-08). On these points, the evidence again supports the appellant's assertion. When asked why he forwarded only the top two candidates from the initial interviews for further consideration, the Executive Assistant indicated that this process had been made in consultation with the Director. IAF, Tab 41 at 107-08. But he also said this process was consistent with past practice at both the Altoona facility and the Pittsburg facility, where he had been working previously. *Id*. As for the appellant's latter point, an email from the Executive Assistant to the Director contains text that recommends the top two candidates receive a second interview, along with an attachment that seems to include all interview scores. IAF, Tab 11 at 44.

The appellant also argues that the Director had knowledge of the appellant's whistleblowing and a motive to retaliate prior to the nonselection, despite the administrative judge indicating otherwise. PFR File, Tab 1 at 6-7 (referencing ID at 26). Once again, the appellant's assertion has merit. Among other things, the record includes a news article dated months before the appellant's nonselection that describes the appellant's whistleblowing, along with the Director's involvement in the matters underlying his whistleblowing. IAF, Tab 27 at 83. It also includes an email chain in which the Director discusses this new article. IAF, Tab 38 at 13-14.

The agency has not disputed these facts, as described in this portion of the appellant's petition. PFR File, Tab 3 at 6-7. Instead, the agency argues that these matters to which the appellant has pointed do not warrant a different result. *Id*. We agree.

Of the three members of the initial interview panel, which would ultimately exclude the appellant from further consideration, two had some knowledge of the appellant's status as a whistleblower. It is possible these officials could have held some institutional motive to retaliate. *See Whitmore*, 680 F.3d at 1370 (recognizing that "[t]hose responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees"). But we are aware of nothing that would support a conclusion that they had a personal motive to retaliate, or that any institutional motive was significant. One panel member worked at a different facility and, as the appellant has noted, the other panel member had only recently joined the Altoona facility for a detail assignment. *E.g*., IAF, Tab 41 at 62, 82-83.

The administrative judge found that the initial interview panel members credibly testified that they did not discuss the appellant's status as a whistleblower and that they did not allow his whistleblower status to influence their decisions. ID at 27-28. We discern no basis for disturbing that credibility determination. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The documentary record also demonstrates that panel members with and without knowledge of the appellant's whistleblowing treated the appellant and all other candidates similarly, both in terms of the interview process and their scoring. IAF, Tab 11 at 56-79. Each rated the appellant highly, just not quite high enough for him to be among the top two forwarded on for further consideration. *Id*. at 53.

As for the Director, who was the selecting official for the Program Specialist vacancy, the record reflects a significant motive to retaliate because some of the appellant's protected disclosures and activities alleged that she had engaged in wrongdoing. *E.g.*, IAF, Tab 27 at 83. However, the Director essentially lacked any opportunity to retaliate against the appellant with respect to the Program Specialist vacancy because the initial interview panel acted alone in eliminating the appellant from further consideration. IAF, Tab 11 at 44, 53.

It seems as if the appellant's theory is that the Director may have conspired with or otherwise influenced one or more of the initial interview panel members to ensure his nonselection. We have carefully considered this possibility because of the Director's significant motive to retaliate. However, clear and convincing evidence supports a different conclusion. The record supports a finding that these individuals acted independently, without any meaningful input or influence from the Director. It further supports a finding that they had little to no motive to retaliate, and those with and without knowledge of the appellant's whistleblowing rated him similarly—better than most candidates but just outside of the top two who would be further considered for the Program Specialist position. Accordingly, as modified by our analysis above, we agree with the administrative judge's conclusion. Although the appellant presented a prima facie case of reprisal regarding this nonselection, the agency has met its burden of proving by clear and convincing evidence that the appellant's nonselection for the Program Specialist position would have occurred in the absence of his protected disclosures and activities.

The appellant failed to prove that he was subject to a significant change in duties, responsibilities, or working conditions.

The other alleged personnel action adjudicated below and raised again on review was a hostile work environment. *E.g.*, IAF, Tab 46 at 5-6; ID at 3. For this claim, the administrative judge first described the facts surrounding four categories of harassment or improprieties the appellant alleged: (a) the agency

stripped the appellant's Administrative Officer duties for a period of time, (b) agency employees professionally and personally shunned him, (c) management encouraged others to file complaints against the appellant, and (d) the agency placed the appellant under a formal investigation. ID at 3, 11-22. Next, the administrative judge found that the knowledge/timing test was satisfied for these instances of alleged harassment, ID at 25, but that only the management encouragement of complaints against the appellant was retaliatory, and that it did not rise to the level of an actionable personnel action, ID at 30-37.

As further explained below, we find that the administrative judge erred in how he addressed this claim. Using the proper analytical framework, we find that the appellant failed to prove that he was subject to a personnel action, as that term is defined in the whistleblower statute. Therefore, the appellant failed to meet his burden for this claim, and we need not shift the burden to the agency for the matter. *See Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014) (recognizing that the Board may not proceed to the clear and convincing evidence test unless it has first determined that the appellant established his prima facie case), *aff'd*, 623 F. App'x 1016 (Fed. Cir. 2015).

The administrative judge correctly noted that the whistleblower statute's definition of a personnel action includes, inter alia, a "significant change in duties, responsibilities, or working conditions" and that phrase must be interpreted broadly. 5 U.S.C. § 2302(a)(2)(A)(xii); ID at 30 (citing *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 23 (2015), *overruled in part by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25). During the period that followed the administrative judge's initial decision, we issued a decision that further clarified the matter, particularly as it relates to allegations of a hostile work environment. *See Skarada v. Department of Veterans Affairs*, 2022 MSPB 17.

In *Skarada,* we explained that although the term "hostile work environment" has a particular meaning in some other contexts, allegations of a

hostile work environment may only establish a personnel action under the whistleblower statute if they meet the statutory criteria, i.e., a significant change in duties, responsibilities, or working conditions. *Id*., ¶ 16. And while the "significant change" personnel action should be interpreted broadly to include harassment and discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system, only agency actions that, individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities will be found to constitute a personnel action covered by section 2302(a)(2)(A)(xii). *Id*.

The circumstances of *Skarada* are worth summarizing for the sake of comparison with the facts of the instant appeal. In *Skarada*, the appellant alleged that his chain of command directed him to stop attending leadership meetings and performing extra duties, and excluded him from the hiring process for two of his new subordinates. *Id*., ¶ 17. However, we found that these appeared to be collateral duties and the appellant failed to prove that these changes were significant, as required to constitute a personnel action under the whistleblower statute. *Id*., ¶¶ 24-25.

The appellant in *Skarada* also alleged that the agency excluded him from meetings and conversations, subjected him to multiple investigations, accused him of improprieties, refused his request for review of his position for a possible upgrade, yelled at him on multiple occasions, and failed to provide him with adequate support. *Id*., ¶ 18. For those matters, the Board similarly found that the appellant failed to prove that he was subject to a personnel action. *Id*., ¶¶ 26-29. We explained that, although he presented evidence in support of many of his allegations, the appellant in *Skarada* failed to prove by preponderant evidence that the agency's actions constituted harassment to such a degree that his working conditions were significantly and practically impacted. *Id*., ¶ 29. Put another way, the appellant may have established an unpleasant or unsupportive work

environment, but he did not prove that he suffered a significant change in working conditions. *Id*.

Turning back to the circumstances at issue in the instant appeal, the administrative judge erred by considering whether the alleged harassment was retaliatory *before* deciding whether the alleged harassment constituted a personnel action. Nevertheless, we agree with his findings of fact, and we conclude that the appellant failed to establish agency actions that, individually or collectively, amounted to a personnel action.

*Stripping the appellant of duties.*

Regarding the alleged changes in his duties in or around April 2018, the administrative judge recounted how the appellant claimed that numerous tasks were stripped from him, resulting in his workload going from approximately 8 hours per day, to about 1 hour per day. ID at 11-12. In contrast, the individual responsible for changes in his duties at that time—the Acting Chief of Physical Medicine and Rehabilitation Service—provided a different description of the circumstances. ID at 13-14. Broadly speaking, the Acting Chief testified that she had never served as an Acting Chief before, she took over that role while still responsible for her regular position as Supervisor of Care, she had a limited understanding of the appellant's role, she did not fully understand how to utilize him, and she did not intentionally strip him of any duty. ID at 13.

The Acting Chief went on to contest the appellant's more specific allegations. For example, although the appellant claimed that the Acting Chief stripped him of his role in the budget process, the Acting Chief indicated that she was not asked to submit a budget during her tenure and she knew nothing about one being required, which would explain why she never gave the appellant any associated tasks. *Id*. In another example, the Acting Chief acknowledged that the appellant was not included in certain action item requests from the front office, but she explained that this was a lapse caused by the action item emails from the front office not being sent to her team, which the Acting Chief remedied once she

learned of the problem. ID at 13-14. As for the appellant's allegations that he had been appointed to certain building and expansion projects but was then excluded from them by the Acting Chief, the Acting Chief disagreed. ID at 14. The Acting Chief indicated that while she did not ask the appellant to attend all meetings associated with these projects, she kept him apprised of the same. *Id*. Finally, the Acting Chief denied the appellant's claim that he was excluded from participating in Medical Center Memorandums. According to the Acting Chief, there was only one Medical Center Memorandum that the appellant was not initially involved in, and that was simply because another individual—a Physical Therapist—had volunteered for the Memorandum involving a new wellness project. *Id*.

The administrative judge did not explicitly find that the appellant's testimony was not credible. However, he did find the Acting Chief's contrary explanation of the circumstances credible and valid for several reasons. ID at 31-32. The administrative judge also noted that other testimony contradicted some of the appellant's testimony about these matters. In particular, the appellant testified that the Acting Chief's eventual replacement restored his stripped duties and revealed to the appellant that the Director had given instructions for the appellant to be targeted. ID at 12. However, the Acting Chief's replacement testified that he received no such instruction and relayed nothing of the sort to the appellant. *Id.*

On review, the appellant argues that when the administrative judge credited the Acting Chief's explanations of her lacking familiarity with the appellant's role, the administrative judge failed to consider inconsistencies between her hearing testimony and deposition testimony. PFR File, Tab 1 at 8-10 (referencing, *e.g.*, IAF, Tab 42 at 56, Tab 47, Hearing Recording, Day 2 (HR2) (testimony of Acting Chief). We are not persuaded.

The evidence the appellant relies on does suggest that the Acting Chief had some understanding of the appellant's position when she took over as Acting

Chief. *E.g.*, IAF, Tab 42 at 56; HR2 at 4:08 (testimony of Acting Chief). But it also supports a conclusion that she lacked a detailed understanding of his position and his involvement in certain projects, and she also lacked a prior working relationship with the appellant, all of which contributed to the temporary changes or lapses that did occur. *E.g.*, IAF, Tab 42 at 58-64; HR2 at 4:09-4:11 (testimony of Acting Chief).

We supplement the administrative judge's findings to conclude that, although the appellant generally described an extreme change in his duties or working conditions—from 8 hours of work per day to 1 hour of work per day— documentary evidence is more consistent with the type of minor changes a subordinate might encounter as they begin working for a new supervisor, particularly when that new supervisor is taking on a new and unfamiliar workload. For example, documents the appellant describes as evidence that he was removed from a particular building project merely consist of a couple cursory emails about the project in which the appellant is not copied. IAF, Tab 26 at 21, Tab 40 at 4-7. Other documentary evidence he submitted about other changes to his duties similarly supports the Acting Chief's explanation and gives no indication that the appellant suffered the extreme change in duties he alleges. *E.g.*, IAF, Tab 26 at 21-22, Tab 40 at 8-11, Tab 41 at 13-21. Given the record before us, the appellant has not proven by preponderant evidence that changes to his duties and working conditions during the Acting Chief's tenure were significant.

*Professional and personal shunning.*

The next category of alleged harassment was the appellant's report of being professionally and personally shunned. For this, the administrative judge simply indicated that the record suggested many employees disliked the appellant, but the appellant did not offer any documentation or testimony to show that management sought to actively harass him by encouraging staff to avoid him. ID at 14.

On review, the appellant presents 15 points in support of his claim of being professionally and personally shunned. PFR File, Tab 1 at 10-13. Many mirror those addressed in one of the other categories of alleged harassment, such as the allegation that the Acting Chief stripped him of duties, so we will not address them again. Many more concern matters occurring after OSC closed its complaint and are, therefore, outside the purview of this appeal. *See Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶¶ 8-9 (2011) (explaining the exhaustion requirement for IRA appeals, which prevents the Board from considering alleged personnel actions that were not raised before OSC); *compare* IAF, Tab 1 at 34-37 (OSC's September 2018 closeout letter), *with* PFR File, Tab 1 at 12-13 (appellant describing numerous complaints he reported to management between October 2018 and January 2019, including one about his November 2018 performance appraisal), *and* IAF, Tab 46 at 5 (prehearing order finding that the appellant's November 2018 performance appraisal was outside the purview of this appeal).

For the few points that remain regarding the allegation that he was professionally and personally shunned, the appellant's arguments on review provide no basis for reaching a conclusion different from that of the administrative judge. To illustrate, the appellant has directed us to his own deposition testimony, where he described one coworker walking away from him, another giving him the middle finger, and his supervisor deleting some of his emails without reading them. PFR File, Tab 1 at 11 (referencing IAF, Tab 24 at 15). He also asserts that agency officials encouraged an agency employee to harass him on private social media accounts. PFR File, Tab 1 at 13 (referencing IAF, Tab 24 at 15). However, he has not directed us to preponderant evidence that these instances of alleged harassment both occurred and rose to the level of a personnel action.

*Management encouraged complaints.*

Regarding the appellant's allegation that management encouraged others to file complaints against him, the administrative judge detailed the underlying facts, which we will briefly summarize. First, the appellant was involved in an analysis of new qualifications for the agency's Physical Therapists, after which a group of Physical Therapists lodged an April 2018 complaint about that analysis and several other issues. ID at 14-18. As a result, the agency convened the fact-finding inquiry that will be discussed below. ID at 19-20. During her interview of several staff members, the investigator responsible for that fact-finding inquiry —a Human Resources Specialist who normally worked at an agency facility on the other side of the country—identified the appellant and one other individual as whistleblowers, and she informed the interviewees that they should consider filing complaints against the appellant and the other whistleblower. ID at 20-21. According to the investigator, she did so for their benefit after learning that the appellant had been naming others in social media posts. ID at 21. The appellant asserted that this led to several additional complaints against him. *Id*.

The administrative judge found nothing nefarious about the initial complaints that led to the formal fact-finding inquiry and found no indication that the complaints were encouraged by management. ID at 33-34. Instead, he found that the appellant provided what seemed to be correct analysis about the Physical Therapists' qualification standards, and the Physical Therapists responded in an unsurprising way, as they advocated for themselves regarding qualifications to attain the next grade level. *Id*.

On the other hand, the administrative judge found that the investigator tasked with investigating the Physical Therapists' complaints did encourage additional complaints against the appellant and did identify him as a whistleblower, which the administrative judge described as bizarre and highly unprofessional. ID at 35-36. Nevertheless, the administrative judge further

found that this and any resulting investigation did not constitute a personnel action under the whistleblower statute.  ID at 36-37.

In his petition for review, the appellant reasserts that the original complaints were also encouraged by management.  PFR File, Tab 1 at 16-17 (referencing ID at 33).  However, it seems as if his accompanying arguments and references to evidence of record do not concern the original complaints.  They instead concern the resulting investigation, during which the administrative judge found that the investigator did encourage complaints against the appellant.  *E.g.*, IAF, Tab 14 at 543, Tab 32 at 9.  More importantly, the appellant has not presented anything to warrant us reaching a conclusion different from that of the administrative judge regarding the significance of management's actions and the encouragement of complaints.

*The agency placed the appellant under a formal fact-finding inquiry.*

Pertaining to the allegation that the agency placed the appellant under the formal fact-finding inquiry mentioned above, the administrative judge provided additional details.  ID at 15-22.  Among other things, he noted that the inquiry covered 11 issues, only 1 of which involved the appellant.  ID at 19.  That lone issue involving the appellant was an allegation that the appellant and another agency official were limiting the professional development of the agency's Physical Therapists.  *Id*.

On review, the appellant argues that the administrative judge's description of the facts surrounding this claim are mistaken in that the judge failed to acknowledge how the Physical Therapists learned of the appellant's analysis regarding their qualifications.  PFR File, Tab 1 at 14.  While the administrative judge indicated that it was not clear how they came to learn of the appellant's analysis, the appellant insists that the record shows they learned of his analysis through a certain agency official—the Associate Director for Operations.  *Id*. (referencing ID at 16-17).  We recognize that the appellant has pointed to at least some evidence to support this contention.  *E.g.*, IAF, Tab 14 at 130-31.  However,

the appellant has not presented any persuasive explanation for why this is particularly relevant. The qualification standards of the agency's Physical Therapists were a matter of discussion among interested parties, *e.g.*, IAF, Tab 29 at 4-10, leading to disagreement and complaints by the Physical Therapists who were seeking advancement to the next grade level, *e.g.*, IAF, Tab 31 at 9-11. The inclusion of the appellant's analysis of the matter, which the administrative judge found to be correct, appears rather innocuous, even if that led to the Physical Therapists including the appellant in their complaints about leadership limiting their advancement. ID at 33.

The appellant also presents an argument about the scope of the fact-finding inquiry and the administrative judge's discussions about the same. PFR File, Tab 1 at 15-16 (referencing ID at 20, 34). However, as the administrative judge noted, the investigation resulted in a determination that the appellant had not engaged in any wrongdoing. ID at 34; *see* IAF, Tab 16 at 57-60. Therefore, the relevance of the appellant's arguments about the scope of the investigation is not apparent.

In sum, the record supports a conclusion that the appellant underwent some changes in duties during the period in which he served under an Acting Chief. It also supports a conclusion that the appellant perceives his working environment as one in which he is not supported. Finally, the record supports a conclusion that the appellant was one of the subjects of a fact-finding inquiry, during which an investigator encouraged others to file complaints against the appellant, but this did not result in the appellant being disciplined or subject to any other notable repercussions. We have considered these matters individually and collectively. After doing so, we find that although the appellant may have established an unpleasant or unsupportive work environment, he did not prove that he was subject to a significant change in duties, responsibilities, or working conditions. Therefore, the appellant has failed to meet his prima facie burden of proof for this claim.

<u>The evidence submitted for the first time on review does not warrant a different result.</u>

As mentioned above, the appellant submitted a series of documents that he did not present below.  PFR File, Tab 1 at 25-68.  He argues that the agency should have provided each in response to his discovery requests, but the agency failed to do so.  *Id*. at 19-20.  Instead, the agency provided the appellant with the documents after the record closed below, in response to a Freedom of Information Act request.  *Id*.  In its response, the agency does not directly address the appellant's assertion that the agency should have provided these documents in response to his discovery requests.  The agency simply argues that these documents submitted for the first time on review have no bearing on this appeal. PFR File, Tab 3 at 12-14.

Under 5 C.F.R. § 1201.115, the Board generally will not consider evidence submitted for the first time with a petition for review absent a showing that it was unavailable before the record was closed before the administrative judge despite the party's due diligence.  *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 213-14 (1980).  To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.  *Becker v. Department of Veterans Affairs*, 112 M.S.P.R. 507, ¶ 8 (2009); 5 C.F.R. § 1201.115(e).  Moreover, the Board will not grant a petition for review based on new evidence absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision.  *Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980).

The first set of documents the appellant presents for the first time on review is a January 2018 email, listing 28 agency whistleblowers from around the country, providing a limited explanation of their whistleblowing, and recommending which might be a good fit for inclusion in the agency's peer-to-peer whistleblower mentor program.  PFR File, Tab 1 at 26-39.  Although all

names are redacted from the document, the appellant argues that this was a message to agency leadership from a Whistleblower Specialist within the agency's Office of Accountability and Whistleblower Protection. *Id*. at 19-22. The second set of documents is a set of emails dated September 2019, a year after OSC closed out the reprisal claim at issue in this appeal. *Id*. at 41-56. Although many names throughout these documents are also redacted, the appellant asserts that this document establishes the individuals involved in the first set of documents. *Id*. at 21-22. The appellant argues that the January 2018 and September 2019 documents, combined, show that numerous agency officials disfavored him. *Id*. at 21.

The third set of documents the appellant presents for the first time on review is a series of May 2018 emails, many of which also have names redacted. *Id*. at 58-61. According to the appellant, these documents show that senior leadership within the agency knew of the fact-finding inquiry involving the appellant. *Id*. at 22.

The fourth and final set of documents the appellant attaches to his petition consists of email exchanges between the agency's representative in this appeal and a hearing witness. *Id*. at 22, 63-68. Generally speaking, these exchanges include the representative informing the witness that he may be called to testify, the witness indicating that he did not want to testify and did not think he had anything of value to add to the appeal, and then the representative eventually indicating that this potential witness would not need to testify. *Id*. at 63-68. According to the appellant, these exchanges show that the agency's representative had inappropriate contact with this potential witness that the representative failed to disclose to the administrative judge. *Id*. at 22-24.

After reviewing all these documents, we find that the appellant has not shown that any of the evidence presented for the first time on review is both new and material. Even if we were to find that the information contained in these documents was previously unavailable, the information would not alter our

conclusions regarding the agency's burden for the nonselections or the appellant's burden for the alleged hostile work environment.  They also do not persuade us that the agency's representative engaged in any improprieties.

## NOTICE OF APPEAL RIGHTS[5]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(A).

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6]   The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.   5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:          _____
                        Gina K. Grippando
                        Clerk of the Board

Washington, D.C.